**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN GILMAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-2355 |
| | § | |
| ARTHUR J. GALLAGHER & CO. *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is the plaintiff's motion to remand. Dkt. 3. Plaintiff John Gilman moves the court to remand his case to state court because the amount in controversy is less than $75,000 and complete diversity between the plaintiff and the defendants does not exist. Dkt. 3. Defendants Arthur J. Gallagher of Texas, Inc., Arthur J. Gallagher & Co., Arthur J. Gallagher Risk Management Services, Inc. ("Gallagher Risk Management"), Arthur J. Gallagher Service Company, and Mike Arnold (collectively "Gallagher") oppose the motion to remand. Dkt. 7. They allege that complete diversity exists because Gallagher of Texas is not a Texas citizen and because Gilman has improperly joined Mike Arnold, who is a Texas citizen. In addition, Gallagher alleges that it is apparent from the face of the petition that the amount in controversy exceeds $75,000. Dkt. 7.

## BACKGROUND

Plaintiff John Gilman, a Texas resident, filed his application for temporary restraining order, original petition, and request for disclosure in Texas state court on June 18, 2009. Dkt.1, Ex. B. He later filed his first amended petition naming defendants Gallagher of Texas, Arthur J. Gallagher & Co., Gallagher Risk Management, Arthur J. Gallagher Service Company, and Gallagher's area president Mike Arnold [collectively "Gallagher"]. Dkt. 1, Ex. B. Gilman alleges five causes of

action: breach of contract, defamation per se, business disparagement, tortious interference with prospective business relations, and injury to business reputation.

Gilman bases his breach of contract claim on Gallagher's alleged termination of Gilman's employment without cause approximately three months into a six-month employment contract. His termination was part of nationwide layoffs in the company. At the time of the alleged breach, Gilman was earning a twenty percent draw on net revenues, with net revenues in 2008, the year preceding the alleged breach, of $609,377. Gilman alleges that this breach caused him actual, consequential, reliance, and out-of-pocket damages; loss of business damages; damages to reputation; damages for mental anguish; and attorney's fees. He also claims that the breach excused him from having to abide by the contract's non-compete provisions.

Gilman's remaining four claims arise out of injuries he alleges were caused to him by Gallagher's wrongful attempts to enforce the non-compete provisions. All these claims revolve around the common theme that Gallagher has misrepresented to Gilman's former clients and prospects that he remains subject to the non-compete. The alleged misrepresentations have interfered with his business relationships and injured his business reputation, resulting in loss of business and lost profits. Gilman seeks exemplary damages in connection with his business disparagement, tortious interference, and injury to business reputation claims, and general damages for his defamation per se claim.

Three of the defendants named in Gilman's petition are indisputably Delaware corporations with principal places of business outside of Texas; they are therefore diverse from Gilman. A fourth defendant, Mike Arnold, is indisputably a Texas citizen. The complaint is noncommital regarding the citizenship of the final defendant, Gallagher of Texas, but seems to imply that it, too, is a Texas citizen. The complaint describes the company as "a former Texas corporation now merged into one

or more companies existing under the laws of the State of Illinois" that "became a non-resident after this cause of action arose in Texas but before the cause matured by suit in a court of competent jurisdiction." Dkt. 1, Ex. B. The complaint further states that Gallagher of Texas may be served in Houston, but it does not mention the company's principal place of business.

Regardless of where Gallagher of Texas resides, at least one defendant, Arnold, is, like Gilman, a resident of Texas.

In his amended petition, Gilman asks the court to grant a temporary restraining order and a permanent injunction restraining Gallagher from contacting his former clients and prospects and representing that he is subject to a non-compete provision. Dkt. 1, Ex. B. Without such a restriction, Gilman asserts, he will suffer irreparable injury to his relationships with these contacts and his business will be disrupted. He also seeks a declaratory judgment declaring the contract's non-compete provisions invalid in light of Gallagher's breach of contract.

In his petition, Gilman requests unspecified damages, interest, court costs, and "all other relief to which [he] is entitled." Although he does not request attorney's fees in the prayer, in the complaint's "Jurisdiction and Venue" section, he stipulates that "this suit involves monetary relief totaling $75,000.00USD or less, excluding court costs, prejudgment interest, and attorney's fees."

Gallagher bases its notice of removal on two contentions. Dkt. 1. First, it argues that the petition alleges only one defendant, Mike Arnold, is a Texas defendant, and Arnold was improperly joined to defeat diversity. Gallagher states Arnold was improperly joined because all the claims against him—defamation per se, business disparagement, tortious interference, and injury to business reputation—fail as a matter of law. Specifically, Gilman cannot show that Arnold's statements to others about the non-compete clause were false because Gilman signed a non-compete agreement, and statements Arnold made about it were therefore true.

Gallagher argues that the second "Texas" plaintiff, Gallagher of Texas, is actually a citizen of Illinois. Dkt. 7. It points out that Gilman's petition admits the company is a "former Texas corporation," and attaches a certificate of merger showing that Gallagher of Texas merged with an Illinois company, Gallagher Risk Management, in 2005. Gallagher does not discuss the alleged Texas company's principal place of business or apply any of the tests for determining whether a state constitutes a company's principal place of business. Because Gallagher of Texas is not a Texas citizen, and Texas citizen Arnold was improperly joined, Gallagher argues, complete diversity exists, making removal to federal court proper.

Gallagher's second basis for removal is that the amount in question exceeds $75,000. It argues it is "facially apparent" that Gilman's suit seeks monetary relief in excess of $75,000 because Gilman stipulated that his damages were less than $75,000 *excluding* attorney's fees. Dkt. 7. Attorney's fees, Gallagher argues, are included in the amount in controversy if a statute or contract allows them to be recovered. Because this is a breach of contract case and Gilman "specifically pled for attorney's fees" (in the "Jurisdiction and Venue" section of the complaint), the stipulation should not allow Gilman to reduce the amount in controversy to prevent the case from being removed to federal court.

Gilman urges the court to remand the case to state court because complete diversity does not exist and the amount in controversy is less than $75,000. Dkt. 3. In his motion to remand, Gilman for the first time clearly alleges that Arthur J. Gallagher of Texas, Inc. is a Texas citizen with its principal location in Houston. Dkt. 3. He cites no facts supporting this contention, though in his reply to Gallagher's response to the motion to remand, he states that the Texas Secretary of State served Gallagher of Texas, though Gallagher of Texas did not answer or consent to removal. Dkt.

8. Gallagher of Texas is among the defendants against whom Gilman asserts his breach of contract claim.

Furthermore, Gilman argues that he properly joined Texas resident Arnold because "(1) a real connection exists between Plaintiff's claims against Arnold and his claims against the other Defendants, and (2) a possibility exists for Plaintiff to establish his claims plead[ed] against one or more non-diverse Defendants." Dkt. 3. Gilman quotes a transcript of a phone call in which Arnold informed one of Gilman's business contacts that Gilman was subject to the noncompete provision—a communication Gilman alleges caused him to lose the contact's business. Although Gilman does not deny that the noncompete provision existed, he argues it is unenforceable under the doctrine of "unclean hands" because Gallagher materially breached the employment agreement by terminating him without cause. Dkt. 7. Gilman argues that he will likely be able to show that because of Gallagher's wrongful actions he was not subject to the non-compete provision and that Gallagher cannot show "there is absolutely no possibility" he may establish a state court cause of action against the two non-diverse parties, Arnold and (allegedly) Gallagher of Texas.

Gilman also argues removal is improper because the amount in controversy is less than $75,000. Dkt. 3. He emphasizes his stipulation in the petition that the amount in controversy does not exceed $75,000 and that he has not requested attorney's fees. He argues he "simply indicated" in his petition that Gallagher's breach of contract caused him to incur, among other costs, attorney's fees. Gilman is essentially arguing it is not, as Gallagher contends, "facially apparent" that the amount in controversy exceeds $75,000.

## THE LAW

A defendant may remove a state civil case to federal court if the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). For a case to be removed based on diversity of

citizenship, the matter in controversy must exceed $75,000 and complete diversity must exist between all parties; in addition, the case is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1332(a) and (c). The burden of proving that federal jurisdiction exists rests on the removing party. *De Aguilar v. Boeing Co.*, 47 F.2d 1404, 1408 (5th Cir. 1995) ("*De Aguilar II*"). "Any ambiguities should be . . . strictly construed in favor of remand." *Manguno* v. *Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Ordinarily the federal court ascertains the amount in controversy by looking at the amount claimed in the state court petition. *Id.* The petition's claims should be considered "as they existed at the time of removal." *Id.* Plaintiffs who plead for specific damages below the jurisdictional amount must show they are "irrevocably bound by their state pleadings." *De Aguilar II*, 47 F.2d at 1412. Some states bind plaintiffs to specific damages pled in their complaint. *Id.* However, other states, including Texas, prohibit plaintiffs from specifying the dollar amount of their damages. When, contrary to state law, a plaintiff has specifically alleged damages less than $75,000, the Fifth Circuit allows a removing defendant to prove the amount in controversy actually does, in fact, exceed the jurisdictional amount required in diversity cases. *Id.* at 1411. It allows defendants to do so out of concern that plaintiffs may in bad faith manipulate the removal provisions by pleading below $75,000 in state court knowing they ultimately may recover more than that.[1] *Id.*

In such cases, the plaintiff's alleged damages "remain presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *Id.* at 1412. The defendant may do so in one of two ways. *Luckett*

[1]A statement in a Texas court original pleading may state only that "the [unliquidated] damages sought are within the jurisdictional limits of the court." *De Aguilar II*, 47 F.3d at 1412 (citing TEX. R. CIV. P. 47(b)).

*v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). First, he may show it is "facially apparent" the damages exceed $75,000, in which case the court "looks only at the face of the complaint and asks whether the amount in controversy [is] likely to exceed [$75,000]." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Second, the defendant may prove damages exceed $75,000 by "setting forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno*, 276 F.3d at 723. To meet the preponderance of the evidence burden, the defendant must "do more tha[n] point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [$75,000]." *De Aguilar II*, 47 F.3d at 1412. A mere conclusory statement will not suffice. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57–58 (5th Cir. 1993) (*De Aguilar I*).

If the defendant meets his burden of proving the plaintiff's damages exceed the jurisdictional amount, then the case will be remanded unless the plaintiff can prove "by a legal certainty" that his recovery will be less than $75,000. *Manguno*, 276 F.3d at 724. The Fifth Circuit has held that plaintiffs may show legal certainty in "various ways," including by "fil[ing] a binding stipulation or affidavit with their complaints" or identifying a state statute that limits their damages to the amount initially pled, i.e., an amount that does not exceed $75,000. *De Aguilar*, 47 F.3d at 1412.[2] Filing such a stipulation after the case has been removed will have no effect because plaintiffs are bound irrevocably by their state pleadings in these situations." *Id.*

Attorney's fees should be included in calculating the amount in controversy if a state statute provides for them. *Manguno*, 276 F.3d at 723. This would include a situation in which the state

---

[2] In *De Aguilar II*, the plaintiffs' attorneys filed an affidavit purporting to bind the Mexican plaintiffs—heirs of passengers killed in the plane crash—to a recovery not exceeding the amount in controversy. The court determined that the affidavit was not binding because it did not list all the plaintiffs and did not meet all requirements for limiting damages recoverable by an estate under Texas law. 47 F.3d at 1415.

statute instructs the court to grant the winning plaintiff "the relief to which she is entitled"—even if the plaintiff has not requested such relief. *Id.* at 724.

**1. Cases Finding It Facially Apparent That Plaintiffs' Damages Exceeded $75,000**

The Fifth Circuit has found it facially apparent that plaintiffs' damages exceeded the jurisdictional amount in cases involving death or severe physical injuries; when multiple plaintiffs sought punitive damages; and when dollar amounts in the petition indicated that, in the event of a favorable verdict, the plaintiff's damages would exceed $75,000. In *De Aguilar I*, multiple plaintiffs sued an airplane manufacturer for deaths of passengers killed in a plane crash. 11 F.3d at 56. In support of their motion to remand, plaintiffs submitted affidavits to the district court stating their damages did not exceed the jurisdictional amount. However, the court said the affidavits could not divest the court of jurisdiction because they were submitted after the time of removal. *Id.* at 57. In addition, the court found it facially apparent that "claims for wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses" would have exceeded the jurisdictional amount. *Id.*

In *Luckett*, the Fifth Circuit also found it was facially apparent that the claims of the plaintiff exceeded the jurisdictional amount in a case in which Luckett accused Delta of losing luggage containing her heart medication, thereby causing her to have heart failure. 171 F.3d at 298. Her alleged damages included "property [losses], travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework." *Id.* The Fifth Circuit also found it facially apparent that damages exceeded $75,000 in *Allen*, where hundreds of plaintiffs alleged damages below the jurisdictional amount but "common

sense" indicated their collective punitive damages would clearly exceed that amount. 63 F.3d at 1336.

In two cases not involving physical injuries, a court in this district has found it facially apparent that the amount in controversy exceeded $75,000. In *Preece v. Physicians Surgical Care, Inc.*, the court found it facially apparent that the amount in controversy exceeded $75,000 where the plaintiff had been denied the right to exercise stock options after his employer terminated him without cause. No. Civ.A. H-06-0715, 2006 WL 1470268 (S.D.Tex. May 26, 2006) (Lake, J.). Preece's complaint stated that the value of the shares exceeded $168,000, an amount obviously above the minimum amount in controversy. Preece alternatively sought relief for breach of contract, fraud, and violations of the Texas Business and Commerce Code. He requested exemplary damages for his fraud claim, which might have equaled twice his economic damages. Also, a state statute allowed him to recover attorney's fees. The court said that even if the plaintiff's declaratory judgment were below the jurisdictional amount, "attorney's fees and exemplary damages could easily inflate his potential recovery to well over $75,000, especially since there [were] three defendants against whom such damages could be assessed." *Id.* at *4.[3]

The court also found that the amount in controversy exceeded $75,000 in a case in which the plaintiff sought damages for the wrongful repossession of her pickup truck. *Whitmire v. Bank One, N.A.*, No. Civ.A. H-05-3732, 2005 WL 3465726 (S.D.Tex. Dec. 16, 2005) (Lake, J.). Whitmire requested damages for economic loss, violations of the Texas Debt Collection Practices Act and the Deceptive Trade Practices Act ("DTPA"), mental anguish, and attorney's fees. She stipulated in her complaint that her damages did not exceed $75,000 and that she would not accept an award above

[3]The opinion's wording seems to conflict somewhat with the Fifth Circuit's requirement that the defendant must "do more tha[n] point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [$75,000]." *De Aguilar II*, 47 F.3d at 1412.

that amount. The petition alleged economic damages of $15,370.50 for the loss of the truck, and the court found that if Whitmire prevailed in her case, the damages would likely be trebled under the DTPA, bringing her minimum recovery for economic damages alone to $45,811.50. *Id.* at *3. Damages awarded for mental anguish also would be subject to trebling, and additional awards for statutory damages and attorney's fees made it facially apparent that her claims were likely to exceed $75,000. *Id.*

A Western District of Texas case in which the court found it facially apparent the plaintiff's damages exceeded $75,000 was *Martin v. Southwest PCS, L.P.* No. SA-03-CA-866-XR, 2003 WL 22477692 (W.D.Tex. Nov. 3, 2003). Martin sought damages for a retaliatory firing motivated by disability discrimination. His complaint stated that his damages did not exceed $75,000. However, the court observed that Martin had not stipulated he would not seek a higher amount of damages. *Id.* at *3. The court also noted the lengthy list of damages Martin sought: past and future lost wages; lost benefits; retirement savings; vacation and retirement benefits; damages for severe emotional distress, humiliation, and mental trauma; injury to Martin's professional reputation; attorney's fees; and punitive damages. *Id.* The court found that "[g]iven Plaintiff's salary [of $23,750 annually plus $19,800 in possible commissions], the length of time since the alleged constructive discharge [more than two years], and the allegations of severe emotional distress," it was facially apparent that the amount in controversy exceeded $75,000. *Id.*

**2. Cases Finding It Not Facially Apparent That Damages Exceeded $75,000**

The Fifth Circuit has found that plaintiffs' damages did not, on the face of the petition, exceed the jurisdictional amount in cases involving minor physical injuries and small-scale business operations. In *ANPAC*, hundreds of Colombian fishermen sued Dow Chemical for damages they sustained after Dow's pesticides severely contaminated the bay in which they fished. *Asociacion*

*Nacional de Pescadores v. Dow Quimica de Columbia*, 988 F.2d 559, 563 (5th Cir. 1993) ("*ANPAC*"). The court said the fishermen's individual claims did not facially exceed the jurisdictional amount because the personal injuries were "mentioned only cursorily" and were described as mere "skin rashes." *Id.* at 565. In addition, "even a fairly sustained loss of income to a small-scale fisherman in Columbia seems unlikely to reach [$75,000]." *Id.* Because it was not facially apparent the plaintiffs' claims exceeded the jurisdictional amount, Dow's remaining option was to set forth facts that showed by a preponderance of the evidence that the actual amount in controversy exceeded $75,000. However, Dow's removal petition and other submissions contained only "bare allegations" that the amount in controversy exceeded the jurisdictional amount and did not provide facts refuting the fishermen's contention about the amount of their individual claims. Id. at 566. Dow therefore did not meet its burden in opposing the motion to remand. *Id.*

Courts in this district have found it was not facially apparent that the plaintiffs' damages exceeded $75,000 in several cases not involving physical injuries. *Gulf Coast Envtl. Sys. v. TKS Control Sys., Inc.*, was a breach of contract case in which the court held it was not facially apparent the plaintiff's damages exceeded $75,000. No. H-08-1080, 2008 WL 2704766 (S.D. Tex. July 7, 2008) (Werlein, J.). There Gulf Coast sued TKS for failing to ship machinery it had contracted to purchase. Gulf Coast's petition stated that its damages did not exceed $75,000. TKS argued the amount in controversy necessarily exceeded $75,000 because the machinery in question was worth at least $75,000, on top of which the plaintiff was seeking consequential and incidental damages as well as attorney's fees. However, the court noted that the goal of damages for breach of contract was to place the plaintiff "in the same position he would have occupied had the breach not occurred." *Id.* at *3. In determining the amount in controversy in a breach of contract case, then, the court must take into consideration plaintiffs' mitigation of damages, e.g., "covering," and deduct

from the expectancy any amounts the plaintiff would have expended even without the breach. *Id.* Here, the plaintiff had failed to receive a piece of machinery valued at $75,000 for which it would have paid approximately $27,000, reducing its damages to less than $50,000. *Id.* at *4. The court said that "[a]lthough this total does not include incidental or consequential damages, the amount of those damages is not facially apparent." *Id.* The court also noted that TKS had "erroneously attempt[ed] to shift to Plaintiff the burden of proving that damages are *less* than $75,000." *Id.*

Another case in this district in which the court found it was not facially apparent the amount in controversy exceeded $75,000 was *Hot-Hed, Inc. v. Safe House Habitats, Ltd.* No. H-06-1509, 2007 WL 556862 (S.D. Tex Feb. 12, 2007) (Werlein, J.). There Hot-Hed sued Safe House for trademark infringement. Safe House removed the case, arguing it was facially apparent that Hot-Hed's claims exceeded $75,000 because Hot-Hed sought exemplary damages and an injunction preventing Safe House from using its trademark. The court said that "[f]or amount in controversy purposes, the value of injunctive relief is the value of the right to be protected or the injury to be prevented." *Id.* at *1 (citing *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252–53 (5th Cir. 1998)). In this case, the defendant had not provided any proof of the value of the right Hot-Hed was seeking to protect, and it was not facially apparent that the value exceeded $75,000. *Id.* The court also held that "the mere fact that exemplary or punitive damages may be recoverable does not establish that the amount in controversy is met." *Id.* at *2.

Another court in this district found it was not facially apparent the amount in controversy exceeded $75,000 in *Powell v. Nat'l Action Fin. Servs.*, No. Civ.A. H050806, 2005 WL 1866150 (S.D. Tex. Aug. 4, 2005) (Hitter, J.). Powell alleged that a debt collection company improperly left urgent messages for her regarding a past due account while she was hospitalized giving birth. Powell's petition included claims for intentional infliction of emotional distress, invasion of privacy,

and violations of the Texas Debt Collection Practices and the DTPA. The court found it was not apparent on the face of the petition that Powell's damages exceeded the jurisdictional amount because her injuries were not "overly extreme" and did not require ongoing medical treatment. *Id.* at *3. In addition, the court rejected the debt collection company's assertion that the potential for exemplary and treble damages proved that the amount in controversy exceeded $75,000, emphasizing that under *De Aguilar II*, the defendant must show more than the possibility that plaintiff's damages exceed the jurisdictional amount; "[t]he defendant must present facts establishing that the *actual* amount in controversy exceeds $75,000." *Id.* (emphasis added).

**3. Cases in Which the Amount in Controversy Turned on Attorney's Fees**

Courts have found it facially apparent that attorney's fees push the amount in controversy above $75,000 in complex cases and/or cases involving multiple plaintiffs. In *Manguno*, the Fifth Circuit upheld the district court's denial of a motion to remand in a class action because, even though the petition stated that the amount in controversy did not exceed the jurisdictional amount, the plaintiffs' attorney's fees in such a case were likely to exceed the jurisdictional threshold. 276 F.3d at 724–25. The court reached this decision despite the fact that the petition stated the plaintiffs were not seeking attorney's fees. *Id.* at 722. The class members' claims fell under a statute that allowed attorney's fees if an insured failed to promptly pay deserving claims, and state law required courts "to grant to a successful plaintiff the relief to which she is entitled, even if she has not demanded such relief." *Id.* at 724.[4]

In contrast, in *Gulf Coast*, a breach of contract case involving a single plaintiff and a single defendant, the court found that Gulf Coast's attorney's fees, did not, when added to its damages for

[4]The defendant in *Manguno* did not argue that attorney's fees would exceed $75,000 under the "facially apparent" test. Instead, it provided an undisputed affidavit listing the number and value of the claims and showing that aggregate attorney's fees in prosecuting these claims would exceed the jurisdictional amount. 276 F.3d at 724.

breach of contract, necessarily push the amount in controversy above $75,000. 2008 WL 2704755, at *4. Initially TKS stated that Gulf Coast's attorney's fees "will most likely exceed $25,000," an assertion the court said was "wholly conclusory." *Id.* Significantly, the court stated that the case involved a "straightforward contract dispute" that "turn[ed] primarily on discrete questions of law regarding the terms of the parties' agreement, which should tend to minimize the amount of fees likely to be recovered." *Id.* Attorney's fees therefore did not necessarily nudge the amount in controversy above $75,000. *Id.*

*Viera v. Spring United Mgmt. Co.* is a Northern District of Texas case in which the court found it was not facially apparent that the plaintiff's statutory attorney's fees, coupled with the plaintiff's actual damages, exceeded $75,000. No. Civ. 3:02-CV-1575-H, 2003 WL 251930 (N.D.Tex. Jan. 31, 2003). Like *Gilman*, *Viera* involved a breach of an employment contract claim. Viera's complaint (in violation of state rules) alleged actual damages of $61,637.70 and estimated that attorney's fees would not exceed $13,000. *Id.* at *2. Although Viera's actual damages approached the jurisdictional threshold even without attorney's fees, the court found it was not facially apparent that the petition's amount in controversy exceeded $75,000. *Id.* at *3.[5]

**4. Application of Law to Gilman**

Gilman has specified in his amended petition that his damages do not exceed $75,000. Dkt. 1, Ex. B. Texas state law prohibits a plaintiff from specifying the amount of his damages. Such a limitation is not binding on the state court and raises concerns the plaintiff is making a bad faith effort to improperly prevent the defendant from removing the case to federal court. *De Aguilar II*,

[5]Spring United was ultimately able to defeat the motion to remand by producing facts that proved by a preponderance of the evidence that attorney's fees would exceed $13,000 and the actual amount in controversy would therefore exceed $75,000. *Id.* To do so, it showed that the plaintiff's attorney's hourly billing rate was $200 and his charges had already exceeded $8,000. The court said the plaintiff's counsel's future activities in the case—including discovery, depositions, and possible motions for summary judgment—made it "more likely than not" that attorney's fees would the raise the plaintiff's total damages above $75,000. *Id.* at *3–4.

47 F.3d at 1410, 1412–1413. Even so, Gilman's allegation of damages of less than $75,000 "remains presumptively correct." *Id.* at 1412. Under such circumstances, Gallagher has the burden of proof of showing by a preponderance of the evidence that Gilman's damages do, in fact, exceed $75,000. *Id.* Gallagher attempts to do so by arguing it is apparent from the face of the complaint that Gilman's damages exceed the jurisdictional amount. It emphasizes that Gilman's breach of contract claim includes an allegation of loss of attorney's fees and that such fees, coupled with Gilman's stipulated damages of "less than $75,000" make it clear on the fact of the amended petition that his claims exceed the jurisdictional amount. Dkt. 7. The court disagrees.

The court finds that it is not facially apparent that Gilman's damages exceed $75,000. His case does not involve any serious physical injuries or pain and suffering, as in *De Aguilar* and *Luckett*. On the face of the complaint, Gilman's breach of contract losses seem relatively limited. At the time of his termination, he was earning a twenty percent draw on net revenues. The complaint does not state Gallagher's net revenues for 2009, but twenty percent of net annual revenues for 2008—$609,377 per the complaint—would have been $121,875.40. Gilman alleges he was wrongfully terminated approximately halfway through a six-month contract, so he would have lost compensation for roughly one quarter of the year. Twenty-five percent of Gilman's annual commission based on the 2008 revenues would just exceed $30,000. The fact that Gilman was let go during "nationwide layoffs" suggests that net revenues for the current year may have declined during 2009, in which case his commissions—and his damages—would also have declined.

Added to Gilman's breach of contract damages would be the value of the injunction he seeks. When the amount of controversy is in dispute, the value of an injunction is "the value of the right to be protected." *Hot-Hed*, 2007 WL 556862, at *1. Here, as in *Hot-Hed*, neither party has provided evidence of the value to Gilman of obtaining the injunction, so the court must decide whether it is

facially apparent that the injunction's value, along with the damages sought, exceeds the jurisdictional amount. *Hot-Head* was a business rather than an individual, yet even there the court held it was not facially apparent that the value of the injunction preventing use of Hot-Head's trademark, plus damages and exemplary damages, exceeded $75,000. Here, the dollar value of Gilman's business contacts has not been alleged. It is also not clear how much of Gilman's income arises from business with his past book of business and contacts and how much from generating new contacts. In addition, the alleged breach of contract occurred in March 2009, less than eight months ago, so Gilman's losses have not had a lengthy time period in which to accumulate. Neither the complaint nor any of the other motions or pleadings indicate how much income Gilman would have earned during this time frame based on his prior business contacts. Gilman's pleadings allege a single specific instance of lost business arising thus far from Gallagher's representations regarding the non-compete clause and, again, the value of this instance of lost business has not been shown.

Although Gilman does request punitive damages for three of his defamation-like claims, these damages involve claims by an individual whose business activities have been hindered, rather than exemplary damages related to hundreds of plaintiffs as in *Allen.* Also, as courts in this district held in *Powell* and *Hot-Hed,* a plaintiff's request for exemplary damages does not necessarily make it facially apparent that his damages exceed the jurisdictional amount.

It can be argued that the hypothetical baseline figure for Gilman's breach of contract claim—roughly $30,000—is twice as high as the economic damages upon which the *Whitmire* court based its determination that the plaintiff's claims exceeded the amount in controversy. This case differs from *Whitmire* in two respects. First, had she prevailed, Whitmire's damages would likely have been trebled under the DTPA; Gilman's breach of contract claims would not. More significantly, *Whitmire* was not a breach of contract case. As a court in this district noted in *Gulf*

*Coast*, in a breach of contract case, the plaintiff's ability to mitigate his losses, as well as any expenses or losses the plaintiff would have experienced even without the breach, must be considered in calculating damages. 2008 WL 2704766, at *3. Here, Gilman was paid strictly on commission and was let go during a time of nationwide layoffs. Neither party has indicated how much Gilman would have earned in 2009 had Gallagher not terminated his contract. Presumably business was down to an extent sufficient to warrant layoffs, so Gilman might have earned much less than he had in prior years. In addition, neither side has indicated whether Gilman has been able to find substitute employment that would mitigate or even erase his losses for breach of contract. Therefore, the court finds that the damages pled by Gilman do not exceed, or even approach, the jurisdictional minimum.

The remaining question is whether Gilman's attorney's fees necessarily push his damages above $75,000. Attorney's fees must be included in the calculation of the amount in controversy if the plaintiff would be able to recover them under a state statute or where a state statute allows the court to grant a successful plaintiff "the relief to which she is entitled." *Manguno*, 276 F.3d at 723–724. Although Gallagher does not cite it, the Texas Civil Practices & Remedies Code allows a winning plaintiff to recover reasonable attorney's fees for breach of contract. TEX. CIV. PRAC. & REM. CODE § 38.001(8). Gilman states in his complaint that his suit "involves monetary relief totaling $75,000USD or less, excluding court costs, prejudgment interest, and *attorney's fees*." Dkt. 1, Ex. B (emphasis added). Although he does not request attorney's fees in his prayer, § 38.001 states that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." § 38.001(8). In addition, *Manguno* states that a plaintiff's "purported waiver of attorney's fees is ineffective" if the state law allows the court to grant the relief to which the successful plaintiff may be entitled. *Manguno*, 276 F.3d at 724. Texas Rule of Civil Procedure 301 states that the court's

judgment "shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX. R. CIV. P. 300. Attorney's fees therefore should be included in the amount in controversy.

The question then is: is it facially apparent that Gilman's damages, including his attorney's fees, exceed the jurisdictional amount? Undoubtedly Gilman's attorney's fees will be nowhere near those in the class action in Manguno, where the aggregate fees for the class exceeded $75,000. Rather, Gilman's case, like that in *Gulf Coast*, is a "straightforward contract dispute" that "turns primarily on discrete questions of law regarding the terms of the parties' agreement." 2008 WL 2704766, at *4. Such cases tend to "minimize the amount of fees." *Id.* This case also resembles *Viera*, itself a breach of contract case, where the Northern District of Texas held it was not facially apparent that the plaintiff's attorney's fees would exceed $13,000.[6] 2003 WL 251930, at *3. It could be argued that this case involves four additional defamation-like claims in addition to the breach of contract claim, so it is a more complex case. But the essential similarity between this case and *Viera* and *Gulf Coast* is the involvement of a single plaintiff basing his claims on a relatively few discrete events, with the primary question here being whether, given the circumstances of his termination, Gilman remains subject to the non-compete provisions. Accordingly, the court finds that adding the probably attorney's fees to the amount of damages facially apparent in the petition, the case does not meet the jurisdictional minimum.

[6]Again, the defense in *Viera* attacked the plaintiff's alleged amount in controversy in two ways. It argued it was facially apparent the amount in controversy exceeded $75,000, but it also presented evidence that actual attorney's fees would, in fact, exceed $13,000. It lost the first argument but prevailed on the second. Here Gallagher has relied solely on the facially apparent test.

### III. CONCLUSION

Despite violating state court rules, Gilman's allegation of damages below $75,000 "remains presumptively correct." *De Aguilar II*, 47 F.3d at 1412. Gallagher had the burden of proving by a preponderance of the evidence that Gilman's actual damages exceeded $75,000. The mere possibility that he might recover more than $75,000 is not enough to satisfy the amount in controversy requirement for federal court jurisdiction. To the extent the amount of controversy here is ambiguous, the question must be resolved in favor of remand. *Manguno*, 276 F.3d at 723. Accordingly, the motion to remand is GRANTED, and this case is REMANDED to the 23rd Judicial District of Wharton County, Texas.

It is so ORDERED.

Signed at Houston, Texas on December 21, 2009.

Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY